## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Virginia R. Roberts, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 04-1233-WEB |
| | ) | |
| Chesapeake Operating, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Now before the Court is Plaintiffs' motion for partial summary judgment.[1]  (Doc. 60).  Plaintiffs allege that they are due additional royalties from the sale of natural gas under the Royalty Agreement.  The Court has jurisdiction over this case pursuant to 28 U.S.C. §1332.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). The Court views the evidence and all reasonable inferences in favor of Defendants as the non-moving parties. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001).  A fact is "material" if under the substantive law it is essential to the proper

---

[1] The parties are reminded to adhere to the Court's standing order by providing paper copies of motions to the Chambers.  See http://www.ksd.uscourts.gov/chambers/index.php

disposition of the claim." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998)). "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.*

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id.* at 670-671. The movant can do this by demonstrating a lack of evidence on an essential element of the nonmovant's claim. *Id.* at 671. "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing Fed. R. Civ. P. 56(e)).

"To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F. 3d at 671 (internal citations and quotations omitted). The nonmoving party cannot defeat a properly supported motion for summary judgment by relying on conclusory allegations; rather the opposing party must come forward with significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).


## II.  FACTS.

1.  Plaintiffs are owners of a mineral estate in Kiowa and Comanche Counties, Kansas.  (Doc. 55 at 2).  OXY USA Inc., the original "lessee" under Royalty Agreement Amendment No. 2, sold and assigned all if its right, title and interest in Plaintiffs' leases to ONEOK Resources Company.  (Id. at 4).

ONEOK Resources Company was acquired by a purchaser, and the acquired entity's name was changed

to Chesapeake ORC, L.L.C. ("Chesapeake") on or about January 1, 2003.  (Doc. 61, Ex. F ¶ 4).

    2.  The Royalty Agreement Amendment No. Two, effective July 1, 1995, in pertinent part, states

the following:

> 1. CALCULATION OF ROYALTY. Notwithstanding the provisions of the various Glick Field
> Leases, all royalty and overriding royalty to be paid to the Lessor for gas produced from wells shall
> be the fraction specified in the lease or assignment applied to the actual proceeds from the sale of
> the gas produced, but not less than a gas value determined by the Price Index. The Price Index
> shall mean the highest of the three-month arithmetical average, rounded to the nearest cent, of either
> (a) those index prices published monthly by Inside FERC Gas Marketing for Panhandle Eastern
> Pipeline Company and Williams Natural Gas Company for the Kansas Region, or (b) the price
> paid to OXY by Kansas Supply Corp., or its successors. The Price Index for the first three months
> of the calendar year 1991 shall be based on the latest available three-month period known as of
> December 15, 1990. Each three-month period thereafter, the Price Index shall be redetermined
> based on the latest available three-month period information known as of 15 days prior to the
> beginning of such period. In the event the identified price source or any portion thereof shall cease
> to be published or otherwise available, the parties shall agree to an alternate pricing index or
> method to be utilized, it being the intent of the parties to establish a method to determine a current
> fair market price for gas of similar quality and quantity based on purchases and sales by willing
> buyers and sellers in the State of Kansas. In the event the parties are unable to agree on a method,
> a method shall be determined through binding arbitration under the rules and procedures of the
> American Arbitrations [sic] Association.

(Id. Ex. A); (Doc. 55, ¶¶ 4.a.4 and 4.b.4).

    3. Since July 1, 1998, *Inside FERC's Gas Market Report ("FERC")*, published monthly by

Platts, a division of the McGraw-Hill Companies, Inc., has utilized a gas price listing for a

reference source originally known as "Williams Natural Gas (Texas, Oklahoma and Kansas)."  (Doc. 61,

Ex. B ¶3).  That listing description was used until July 1, 1998, when the pipeline's parent company, The

Williams Companies Inc., changed the unit's name to Williams Gas Pipelines Central Inc., and *FERC*

changed its listing accordingly.  (Id.).

4. In November 2002, Williams Gas Pipelines Central Inc. was acquired by Southern Star Gas Pipeline Central Inc.; however, *FERC* continued to carry the listing "Williams Gas Pipelines Central Inc." for approximately two more years. (Id. Ex. C). The relevant listing in *FERC* was eventually renamed on August 1, 2004, from "Williams Gas Pipelines Central Inc. (Texas, Oklahoma, Kansas)" to "Southern Star Central Gas Pipeline Inc. (Texas, Oklahoma, Kansas)". (Id. Ex. B, ¶4; D).

5. The name change within *FERC* to "Southern Star Central Gas Pipeline Inc." was reflected by a notation in the *Platts Methodology Guide* in August 2004:

> **Southern Star**, Tx.-Okla.-Kan. (daily and monthly survey)
> Deliveries into Southern Star Central Gas Pipeline's system from Hemphill County in the Texas panhandle eastward, from Carter County in south-central Oklahoma northward and from Grant County in southwestern Kansas eastward. In the past, the system was known as Williams Natural Gas and, prior to Aug. 1, 2004, Williams Gas Pipelines Central.

(Id. Ex. E).

6. The methodology for establishing the gas index price listing reported in *FERC* has not changed as a result of either the sale from The Williams Companies to Southern Star Central Corp., or the corresponding change in the published name from "Williams Gas Pipelines Central Inc." to "Southern Star Central Gas Pipeline Inc.". Further, the substantive information concerning the gas index pricing for the Kansas region was not in any way altered by this change in the published name for the listing, and the listing remains available in *FERC*. (Id. Ex. B, ¶5).

7. The *FERC* listing for Panhandle Eastern Pipe Line Co. for deliveries in the Kansas region has remained the same since January 1, 1988, and is currently reported as "Panhandle Eastern Pipe Line Co., Texas, Oklahoma (mainline)". (Id. ¶ 6).

8. On or about May 1, 2002, ONEOK Midstream Gas Supply, LLC ("ONEOK") entered into

a contract ("Gas Agreement") with its affiliate, ONEOK Resources Company, for the purchase and processing of gas from Plaintiffs' mineral estate. (Id. Ex. F ¶ 3). Under the Gas Agreement, payments for residue gas sold are to be calculated with reference to the *FERC* listing for "Williams Gas Pipeline Central, Inc. (Texas, Oklahoma, Kansas)". (Id. ¶ 5).

9. From August 2004 through October 2004 and December 2004 until present, payments from ONEOK to Chesapeake have been made under the Gas Agreement with reference to "Southern Star Central Gas Pipeline, Inc. (Texas, Oklahoma and Kansas)" index as reported in *FERC*. (Id. ¶ 7).

## III.  GOVERNING LAW

A federal court sitting in diversity jurisdiction applies the substantive law and the choice of law provisions of the forum state, which in this case is Kansas. *Missouri P.R. Co. v. Kansas Gas & Electric Co.,* 862 F.2d 796, 798 n1 (10th Cir. 1988). "For purposes of contract construction, Kansas follows the theory of lex loci contractus – the place of the making of the contract controls. Under this approach, the court looks to where the last act necessary for the creation of the contract takes place, and that state's law controls." *Clements v. Emery Worldwide Airlines, Inc.*, 44 F. Supp. 2d 1141, 1145 (D. Kan. 1999). "A contract is made at the time when the last act necessary for its formation is done, and at the place where that final act is done." *Smith v. McBride & Dehmer Constr. Co.*, 216 Kan. 76, 79, 530 P.2d 1222, 1225 (1975). The parties do not provide any facts showing where the contract was formed; however, both parties use Kansas law in their arguments and agreed in the pretrial order that Kansas contract law governs the case. (Doc. 55 at 2-3). Consequently, the Court will apply Kansas law to resolve this motion.

"The interpretation of a written instrument is a question of law." *Marquis v. State Farm Fire &*

5

*Cas. Co.*, 265 Kan. 317, 324, 961 P.2d 1213, 1219 (1998).

> The cardinal rule of contract construction requires courts to determine the parties' intent from the four corners of the instrument by construing all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision. This rule must be applied prior to the introduction of any extrinsic evidence regarding the intent of the parties. Where the language of the contract is clear and can be carried out as written, there is no room for construction or modification of the terms.

*Metropolitan Life Ins. Co. v. Strnad*, 255 Kan. 657, 671, 876 P.2d 1362, 1371 (1994) (internal citations omitted).

This motion seeks to resolve a disagreement as to the interpretation of "otherwise available" as it is used in the royalty agreement. Plaintiffs argue that the *FERC* price index is "otherwise available" despite the name change from Williams Company to Southern Star. The Court will begin with an analysis of the agreement's language.

> In the event the identified price source or any portion thereof *shall cease to be published or otherwise available,* the parties shall agree to an alternate pricing index or method to be utilized...

(Doc. 61, Ex. A) (emphasis added).

The term "otherwise available" is not defined anywhere in the royalty agreement and, unsurprisingly, both parties have a different interpretation of how it was intended to be defined. The Court finds "otherwise available" to be vague and subject to different meanings; consequently, this language in the royalty agreement is ambiguous. *See Duffin v. Patrick*, 212 Kan. 772, 778, 512 P.2d 442, 448 (1973) (language in a contract is ambiguous when the words used to express the meaning and intention of the parties may be understood to reach two or more possible meanings).

When construing ambiguous terms, the Court must consider "all language employed, the circumstances existing when the agreement was made, the object sought to be attained, and other

circumstances, if any, which tend to clarify the real intention of the parties." *Universal Loader Fuels, Inc. v. Johnston,* 260 Kan. 58, 63, 917 P.2d 877 (1996).

The use of the word "or" in the above emphasized text merits closer study. Or is defined "as a function word [used] to indicate an alternative <coffee [or] tea>, <sink [or] swim>". Merriam-Webster's Collegiate Dictionary 815 (10th ed. 2001).

Using this definition, it is clear that ceasing to be published or ceasing to be otherwise available are alternative events which independently trigger the need to agree to an alternate pricing index. Indeed, to construe this provision otherwise would require the price index to cease being published as well as to cease being otherwise available. This dual requirement would conflict with the alternative definition of the word "or" and the intent of the parties. *Wood River Pipeline Co. v. Willbros Energy Services Co.*, 241 Kan. 580, 586, 738 P.2d 866, 872 (1987) (intent of the parties and meaning of a contract are to be determined from the plain, general, and common meaning of the terms used). Consequently, the inquiry ends once the Williams Company price index either ceases to be published or be otherwise available. In this case it ceased to be published; hence, further analysis of "otherwise available" is unnecessary.

However, even if the contract did require both conditions to be met, the Court does not find the Williams Company price index to be "otherwise available" in the form of the Southern Star price index. The Court will use other provisions of the agreement to succor with the interpretation of the nebulous term "otherwise available". *Metropolitan,* 255 Kan. at 671 (intent is determined by all four corners and not by sole analysis of an isolated provision).

The Price Index shall mean the highest of the three-month arithmetical average, rounded to the nearest cent, of either (a) those index prices published monthly by Inside FERC Gas Marketing for Panhandle Eastern Pipeline Company and Williams Natural Gas Company for the Kansas

Region, or (b) the price paid to OXY by Kansas Gas Supply Corp., *or its successors.*

(Doc. 61, Ex. A) (emphasis added).

The above provision allows the successors of the Kansas Gas Supply Corporation to be used in the price calculation; however, that same language is omitted in the clause which addresses the Williams Company.

> The maxim *expressio unius est exlusio alterius* is used in the interpretation and construction of a contract when the intention of the parties is not clear. It is merely an auxiliary rule of construction and is not conclusive; it should be applied only as a means of discovering intent not otherwise manifest and should never be permitted to defeat the plainly indicated purpose of the parties. The extent to which the doctrine should be applied depends in any event on how clearly the drafter's intent is otherwise expressed.

*Metropolitan*, 255 Kan. at 662.

The Court will apply this rule extensively as the intent of the parties is not clear. The parties omitted a provision allowing for the contract to continue without renegotiation if the Williams Company were succeeded by another. The parties clearly could have incorporated language to include a successor to the Williams Natural Gas Company because they did so with respect to the Kansas Gas Supply Corp. Under *expressio unius est exclusio alterius*, the Court finds that the failure to include the words "or its successors" manifests an intent to limit the price index to the Williams Natural Gas Company and not successor companies. *See Starr v. Union Pac. R.R.*, 31 Kan. App. 2d 906, 914, 75 P.3d 266, 271 (2003) (using *expressio unius est exclusio alterius*, the court construed a contract's paragraph that did not include attorneys fees to be an intentional omission because the parties had included attorneys fees in another part of the contract). Given the parties' intent to limit the price index to the Williams Company , a construction of "otherwise available" must be similarly limited. *Metropolitan,* 255 Kan. at 671 (intent

8

determined by construing all provisions together and in harmony with each other).   Such a concomitant limitation necessarily excludes the price index for the Williams Company's successor, Southern Star.

Plaintiffs argue that the failure to provide for 'successors' of the Williams company was unnecessary because the pipeline formerly owned by Williams and now owned by Southern Star was recognized by the parties as being so extensive that it would continue to be a price index source.   Plaintiffs support this argument with facts taken from the affidavit of the editor of *FERC*.[2]   The *FERC* editor states that neither the pricing methodology nor the substantive information about the price index has changed since the name change.

This argument is unpersuasive.   *FERC*'s editor is not a party to the royalty agreement.   Plaintiffs fail to explain how this information from a non-party sheds light on the intent of the parties at the time of contract.   There are no facts to show the parties knew the pricing methodology would remain the same if the ownership changed or that they intentionally omitted the word 'successors' as a result of this knowledge.   *See Dorchester Exploration, Inc. Sunflower Electric Cooperative...,* 504 F. Supp. 926, 936 (D. Kan. 1980) (the fundamental principle in contract interpretation is to give effect to the mutual intentions of the parties at the time the contract was made).

Plaintiffs next argue that Chesapeake's subsequent conduct shows that there is no difference between the Southern Star and Williams Company price indices.   Plaintiffs support this proposition with evidence that Chesapeake and ONEOK modified their Gas Agreement to use the Southern Star price after the Williams Company price ceased to be published.

_____

[2] Plaintiffs also allege that OXY drafted the agreement; however, this is not supported by evidence as required by Rule 56.

"Subsequent conduct of parties to a contract may aid interpretation of controversial provisions. If parties to a contract, subsequent to its execution, have shown by their conduct that they have placed a common interpretation on the contract, this interpretation will be given great weight in determining the meaning to be attributed to the provisions in question." *Cline v. Angle*, 216 Kan. 328, 333-334, 532 P.2d 1097-1098 (1975).

Plaintiffs' reliance on Chesapeake's subsequent conduct is misplaced.  The parties' decision to modify the Gas Agreement by substituting the Southern Star price for the Williams Company price shows nothing more than a mutual assent to modify a contract. *See Gill Mortuary v. Sutoris, Inc.*, 207 Kan. 557, 562, 485 P.2d 1377, 1381 (1971) (mutuality is required to amend the terms of a contract). Chesapeake's decision to modify a different contract with a different party does not reveal anything about the intent of the parties in the royalty agreement.  The Court holds that the contract's provisions do not allow for a grant of partial summary judgment on this issue to Plaintiffs.

## IV. ARBITRATION

Defendants argue that once the Court finds the Williams Company price index as not otherwise available, the issue must be sent to arbitration.  The royalty agreement states that once a price source ceases to be published or otherwise available, the parties shall agree to an alternate pricing index or method to utilize.  The Court has resolved the issue of whether the Williams Company price is otherwise available. Now that this issue has been put to rest, the parties must agree to an alternate pricing index.  However, the royalty agreement provides that "[i]n the event the parties are unable to agree on a method, a method shall be determined through binding arbitration under the rules and procedures of the American Arbitrations [sic]

Association."  (Doc. 61, Ex. A).

"In construing an arbitration provision, as with any other contract term, the parties' intentions control." *Pay Phone Concepts v. MCI Telecommunications Corp.*, 904 F. Supp. 1202, 1208 (D. Kan. 1995).   Federal policy favors arbitration as an inexpensive and expeditious method of dispute resolution; consequently, the parties' intentions are generously construed to resolve ambiguities and any doubts in favor of arbitration.   *Id.*   The arbitration provision is a clear manifestation of the parties' intent to submit this disputed issue to arbitration.  The Court holds that if the parties cannot agree to an alternate pricing index, the matter must be submitted to arbitration and this action will be stayed pending the resolution of this issue in arbitration.  See 9 U.S.C. § 3 (upon motion by one of the parties, an action shall be stayed pending resolution of arbitration).

## V.  FACTS ESTABLISHED FOR TRIAL

While there is an absence of a genuine issue of material fact for the facts listed in this order, as discussed above, it does not entitle Plaintiffs to judgment as a matter of law.  However, Plaintiffs have requested, in the alternative, that the Court establish which facts are undisputed and deem them as established for trial.  Federal Rule of Civil Procedure 56(d) states:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed. R. Civ. P. 56(d).

"This rule does not authorize an independent motion to establish certain facts as true but merely serves to salvage some constructive result from the judicial effort expended in denying a proper summary judgment motion." *City of Wichita v. United States Gypsum Co.*, 828 F. Supp. 851, 869 (D. Kan. 1993) (rev'd in part on other grounds); *see Lovejoy Electronics, Inc. v. O'Berto*, 616 F. Supp. 1464, 1473 (D.C. Ill. 1985).  Defendants do not controvert Plaintiffs' facts, which the Court has listed in this opinion as facts one through nine.[3]  Because no dispute exists as to the facts in this order, Plaintiffs' motion for partial summary judgment will be granted on this limited ground.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Doc. 60) be DENIED in part and GRANTED in part in accordance with the above provisions;

It is further ORDERED if the parties do not agree to an alternate price index, the matter be submitted to arbitration.

SO ORDERED this 3rd  day of April, 2006.

 s/ Wesley E. Brown

Wesley E. Brown, U.S. Senior District Judge

---

[3] Defendants added other facts in their response; however, Plaintiffs have controverted those facts and they are not included among the facts deemed established.  Additionally, fact one includes information to which the parties stipulated in the pretrial order.

12